IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

APRIL D.,[1]

            Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

Case No. 1:20-cv-00424-AA
**ORDER AND OPINION**

AIKEN, District Judge:

    Plaintiff April D. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – ORDER AND OPINION

For the reasons below, the decision of the Commissioner is REVERSED and the case is REMANDED for further proceedings.

## BACKGROUND

On August 31, 2016, plaintiff filed a Title XVI application for supplemental security income, alleging disability due to anxiety, posttraumatic stress disorder ("PTSD"), depression, bipolar disorder, a throat condition, back pain, cervical cancer, and asthma. Tr. 85. The initial application alleged disability beginning on April 1, 2008. Tr. 171. On November 1, 2018, plaintiff amended the alleged onset date to August 31, 2016. Tr. 166. The application was denied initially and again at reconsideration. Tr. 63, 78. Plaintiff requested an administrative hearing, which was held before an Administrative Law Judge ("ALJ") on December 4, 2018. Tr. 26, 95. On January 24, 2019, the ALJ issued a decision finding plaintiff not disabled and denied plaintiff's application. Tr. 21. On January 23, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if they are unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be severe such that the claimant is unable to perform any past work or other gainful employment. 20 C.F.R. § 416.905(a).

To make the disability determination, the Commissioner assesses the claimant pursuant to a five-step sequential evaluation. 20 C.F.R. § 416.920(a)(4). The five steps of the inquiry assess (1) whether claimant is presently working in a substantially gainful activity; (2) whether the claimant's impairment is severe; (3) whether the impairment meets or equals one of the specific impairments listed in federal regulations; (4) whether the claimant is able to perform any work that they have done in the past; and (5) whether the claimant is able to do any other work. 20 C.F.R. § 416.920(a)(4)(i)-(v); *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). At each step, the ALJ has an affirmative duty to assist the claimant in developing the record. *Bustamante*, 262 F.3d at 954.

The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the Commissioner must establish that there are work opportunities in significant numbers in the national economy that the claimant can perform. *Id.* at 1099. The Commissioner must consider the claimant's residual functional capacity ("RFC"), age, education, and work experience in determining whether the claimant can adjust to other types of work. 20 C.F.R. § 416.920(a)(4)(v).

### THE ALJ'S FINDINGS

In this case, the ALJ conducted the five-step sequential evaluation and determined plaintiff was not disabled. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 31, 2016, the amended alleged onset date. Tr. 15.

At step two, the ALJ found that plaintiff had the following severe impairments: PTSD, anxiety, bipolar disorder, and depression. Tr. 15. The ALJ also determined that plaintiff's learning disorders and asthma were not medically determinable impairments and that her back impairment was not severe. Tr. 15-16.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the regulations. Tr. 16. The ALJ determined plaintiff had the residual functional capacity to perform a full range of work with the following limitations: she could perform simple, routine tasks with only superficial or brief interaction with the public. Tr. 17.

At step four, the ALJ found that plaintiff had no past relevant work. Tr. 19. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. Tr. 20. Accordingly, the ALJ found that plaintiff was not disabled as defined in the Social Security Act. Tr. 21.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence means "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (quoting *Biestek v. Berryhill*, 139 S. ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged

errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly assessing plaintiff's back impairment and alleged learning disability at step two of the sequential analysis, thereby making the RFC analysis defective; (2) improperly rejecting plaintiff's subjective symptom testimony; (3) improperly weighing the opinion of plaintiff's psychiatric nurse practitioner; and (4) improperly rejecting the lay witness statements from plaintiff's mother and plaintiff's former supervisor. Without these errors, plaintiff asserts that the ALJ should have found her disabled.

## I.    Step Two and the RFC

Plaintiff first argues that the ALJ erred at step two of the sequential evaluation by failing to find that her alleged learning disability is a medically

determinable impairment and that her chronic lower back pain is a severe impairment.  At step two, a claimant must make a threshold showing that he or she has at least one medically determinable impairment that is severe such that it significantly limits his or her ability to perform basic work activities.  20 C.F.R. §§ 416.920(a)(4)(ii), 921(a) (2016); *Buck v. Berryhill*, 1869 F.3d 1040, 1048 (9th Cir. 2017).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

To establish the presence of a medically determinable impairment, the claimant must provide objective medical evidence consisting of the results of medical testing that uses acceptable diagnostic techniques ("signs") and the claimant's own perception and description of the physical or mental impairment ("symptoms").  20 C.F.R. § 416.908; *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  A claimant's statement of his or her symptoms is not by itself sufficient to establish a medically determinable impairment.  *See* 20 C.F.R § 416.908 (2016).

The ALJ next assesses the severity of a claimant's medically determinable impairment by considering all available medical and other evidence, including the claimant's daily living activities, subjective symptom reports, and treatment history. 20 C.F.R. § 416.929(c)(3)(i)-(vii) (2016); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *Bradford v. Berryhill*, CASE NO. 2:17-cv-00442 JRC, 2017 WL 4992763, at *3 (W.D. Wash. Nov. 2, 2017).  An impairment or combination of impairments that has no more than a minimal effect on the claimant's ability to work is not severe. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

However, the ALJ is required to consider the combined effect of all the claimant's impairments, both severe and non-severe, on his or her ability to work while formulating the RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). When step two is resolved in claimant's favor, the sequential analysis proceeds and the ALJ must continue to consider each of claimant's limitations. *Nannette A. v. Comm'r*, 3:19-cv-00509-BR, 2020 WL 1528281 at \*4 (citing *Vivian v. Saul*, 780 F. App'x 526, 527 (9th Cir. 2019)). Thus, legal error at step two is harmless if step two is resolved in the claimant's favor and all the claimant's limitations are properly considered in the RFC. *Id.*

At step two and throughout the sequential evaluation, the ALJ has the affirmative obligation to assist the claimant in developing the administrative record. *Bustamante*, 262 F.3d at 953. "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, [or] the ALJ's own finding that the record is inadequate . . . ." *Webb*, 433 F.3d at 687. Nevertheless, the claimant carries the burden of proof that an impairment imposes functional limitations on his or her ability to work. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (holding that "[t]he mere existence of an impairment is insufficient proof of a disability" and claimant bore burden to prove his back impairment that precluded heavy lifting also precluded him from all work activity); *see also Gurin v. Saul*, 842 F. App'x 45, 48 (9th Cir. 2021) (holding that the RFC was not defective after treating physicians found claimant had no functional limitations associated with his physical impairment and claimant held the burden to prove otherwise).

As an initial matter, in the case at hand, step two was resolved in plaintiff's favor.  Plaintiff contends that the ALJ committed two harmful legal errors at this step.  For the reasons explained below, the ALJ properly considered all of plaintiff's limitations while formulating the RFC and therefore any error is harmless.

### A.    *Plaintiff's Alleged Learning Disorders*

Plaintiff argues that the ALJ should have found her alleged learning disorder to be a medically determinable impairment based on the report from the examining psychologist, Dr. Cole.  Alternatively, plaintiff asserts that the ALJ failed to assist plaintiff in developing the record.

First, the ALJ did not err by finding that plaintiff's alleged learning disorders are not medically determinable impairments.  Dr. Cole is an acceptable medical source; however, the record lacks signs or any diagnostic evidence. In the diagnoses section of his report, Dr. Cole noted "Specific Learning Disorders, With Impairment in Reading, Written Expression, and Mathematics (*per the client's report of her academic history*)", suggesting plaintiff self-reported her diagnosis which Dr. Cole subsequently recorded.  Tr. 464 (emphasis added).  Dr. Cole did not evaluate or test plaintiff for learning disorders, and as such, the record lacks the requisite medical signs. Plaintiff's statement regarding her academic history on its own cannot establish the presence of a medically determinable impairment.

Additionally, the duty to assist plaintiff in developing the record was not triggered because the evidence is not ambiguous.  There is no dispute as to whether plaintiff participated in special education courses in high school and there is no

evidence in the record that suggests plaintiff has ever undergone testing specifically for learning disorders.

Regardless, even if the ALJ erred, it was harmless. The ALJ considered Dr. Cole's evaluation in the RFC, noting that "[t]hough Dr. Cole [did] not provide specific restrictions that can form the basis of a residual function capacity, the reference to . . . problems with attention, concentration, and memory [is] consistent with limitations to simple, repetitive tasks . . . ." Tr. 19. Plaintiff does not identify any specific functional limitations that result from her alleged learning disorders that the ALJ omitted from the RFC.

### B.    *Plaintiff's Lower Back Impairment*

Plaintiff next argues that the ALJ erred by failing to find her chronic lower back pain is a severe impairment. Specifically, plaintiff argues that the ALJ improperly relied solely on the results of lumbosacral x-rays without considering the effect of plaintiff's pain symptoms on her ability to work. The ALJ's step two findings reference the results of an x-ray that found no significant degenerative changes in plaintiff's lower back but make no mention of other evidence in the record, including plaintiff's pain symptoms. Tr. 17-18. In the RFC formulation, the ALJ did not include any physical limitations, noting that "the medical record does not establish severe physical impairments." Tr. 17-18.

The ALJ should have considered other evidence of plaintiff's back impairment. For instance, the record shows that plaintiff left a position as a home health aide in 2008 due to back pain, and later, in 2014, plaintiff sought medical care for the pain

and was prescribed anti-inflammatory medication and referred to physical therapy. Tr. 180, 425, 431, 434, 436.  In her Adult Function Report from 2016, plaintiff reported difficulty lifting, bending, standing, and walking. Tr. 204.  In 2017, plaintiff attended physical therapy and reported back pain to her medical providers. *See e.g.,* Tr. 513, 543.  The ALJ erred by wholly disregarding this evidence.

However, any error was harmless.  Plaintiff failed to carry the burden to prove that her back impairment caused specific functional limitations on her ability to work.  The medical record does not establish that her back pain precludes certain types of work or exertion levels—indeed, every opinion from a medical provider concluded that the primary challenges to plaintiff's vocational pursuits were connected to her mental health impairments. Tr. 59, 73, 470, 572.  Moreover, plaintiff herself did not mention any limitations related to her back impairment at the administrative hearing, and instead identified her mental health as the primary barrier to her ability to work.  Tr. 32.  Absent any identifiable limitations, the ALJ could not have erred by omitting discussion of plaintiff's back impairment from the RFC.

## II.    Subjective Symptom Testimony

Plaintiff next argues that the ALJ improperly discounted her subjective symptom statements.  At the administrative hearing, plaintiff testified that her PTSD, bipolar disorder, and depression "shut me down to the point where I can't even function." Tr. 32.  Plaintiff explained both at the hearing and in her 2016 function report that she suffers from intense anxiety while in public and experiences

flashbacks of abuse during the day and night that disrupt her housework and sleep. Tr. 43-44, 199-200.

The ALJ advanced two reasons to discount these symptom statements. First, the ALJ determined plaintiff's statement were inconsistent with evidence in the medical record that her condition "shows good response to medication and counseling." Tr. 17. Second, the ALJ found that plaintiff's ability to "maintain independent living while also providing care for several family members" and "engagement in activities outside of the home" conflicted with plaintiff's alleged symptoms. *Id.*

If a claimant has presented objective medical evidence of an impairment that could reasonably be expected to cause the alleged symptoms, an ALJ is required to consider that claimant's testimony regarding his or her subjective symptoms. *See* 20 C.F.R. § 416.929(a) (2016). Unless there is evidence of malingering, the ALJ may reject the symptom testimony only by offering specific, clear, and convincing reasons. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

To meet this standard, the ALJ's findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Accordingly, an ALJ must identify with specificity which evidence undermines which of the claimant's allegations. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the ALJ's finding is supported by substantial evidence in the record, the court "may

not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

An inconsistency between a claimant's symptom statements and the medical record is a sufficiently clear-and-convincing reason to discount those statements. *See Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009) (plaintiff's continued smoking habit was inconsistent with respiratory diagnoses); *see also* 20 C.F.R. 416.929(c)(3)(i) (2016). The ALJ may also reject a claimant's symptom testimony if the plaintiff's activity level is inconsistent with the alleged level of impairment. *Molina v.* Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* However, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Moreover, the specific examples relied upon by the ALJ must fairly represent the claimant's functional limitations and remaining ability. *Garrison*, 759 F.3d 995, 1017 (9th Cir. 2014). With respect to mental health impairments, an ALJ may consider periods of improvement, but nevertheless must bear in mind that mental impairments typically wax and wane. *Id.* (citing *Ryan v. Comm'r*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)). Accordingly, an ALJ errs by relying on isolated instances of improvement without considering the nature of the claimant's specific mental health issues and overall wellbeing. *Id.* at 1017. "[T]he data points they choose must in fact

constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard." *Id.* at 1018.

In this case, neither of the ALJ's reasons for discounting plaintiff's symptom testimony are sufficiently specific, clear, and convincing.  First, the ALJ improperly points to examples of relative improvement in plaintiff's mental health that do not reflect a broader pattern of recovery.  In his findings, which rely on treatment notes from plaintiff's psychiatric nurse practitioner, the ALJ noted that plaintiff would "often report stability when back on medications or after requesting an adjustment" and "the most recent records show normal moods."  Tr. 18.  This conclusion is belied by the record, which shows that plaintiff's anxiety, excessive anger, and difficulty sleeping persisted throughout her treatment and during periods of improvement. *See* Tr. 539, 541, 543, 546-47, 549, 553, 555, 561, 563, 564, 570, 572, 579, 582, 585, 591.

For instance, during a visit in October 2016, plaintiff exhibited a "good, stable" mood but was still experiencing flashbacks.  Tr. 539.  In February 2017, after increasing her medication, plaintiff reported two weeks of improvement followed by hypomania, poor sleep, and depression symptoms.  Tr. 546.  In July 2018, plaintiff reported improvement after another dosage change but expressed continued struggles with managing her anger.  Tr. 579, 582.  Moreover, at the hearing, plaintiff acknowledged that her medication has improved her functioning "to certain points" by helping her to "get out of bed, [] to say hi, [] to answer [her] phone," Tr. 32-33, but added that she "g[ets] too many day terrors and night terrors, even with my meds," Tr. 43.  The ALJ failed to meet the clear-and-convincing standard by relying on

examples of relative improvement in plaintiff's mental health without considering her persistent symptoms or the nature of her impairments.

Similarly, plaintiff's ability to maintain independent living and care for her children and grandmother is not a sufficiently clear-and-convincing reason to reject her symptom testimony because these activities do not clearly conflict with her activity level.. The ALJ's findings focus on plaintiff's ability to "manage her grandmother's medications and arrang[e] for medical transport," participate in her children's schooling, and use public transportation. Tr. 18.

Plaintiff does in fact help care for her grandmother, but her own testimony and statements elaborate on how her impairments interfere with these care duties. Plaintiff testified that she was taking care of her grandmother for "two, three hours, sometimes all day." and "that's even with leaving in a half an hour, and coming back, and finishing, hav[ing] another breakdown . . . could be 15, 20 minutes, and then I'm back out." Tr. 44. Plaintiff also testified that she understands the contents of and signs off on her children's individualized education plans ("IEP") and participates in phone conferences regarding the IEPs. Tr. 38-39. The ALJ's findings do not articulate the ways in which periodic of an IEP or phone conversations conflicts with plaintiff's statements that she experiences anxiety in public and struggles to handle stress. Per the ALJ's own decision, "[plaintiff] does not allege she is completely unable to handle interactions with others." Tr. 16.

Finally, plaintiff checked a box on her function report and reported to Dr. Cole that she is able to use public transportation, but also wrote that her grandmother

gives her a ride everywhere. Tr. 202, 464. The record does not indicate how often plaintiff in fact uses the bus, but does establish that her grandmother accompanies her to the store. Tr. 194, 199.  Accordingly, the ALJ's conclusions are not supported by substantial evidence, and so constitute harmful error.

## III.    Medical Opinion Evidence

Finally, plaintiff argues that the ALJ improperly evaluated the medical opinion evidence by assigning "little weight" to the opinion of Psychiatric-Mental Health Nurse Practitioner ("PMHNP"), Cheryle Ramirez, who opined that plaintiff had marked to extreme limitations on her ability to perform work-related tasks.  Tr. 19.  The ALJ also assigned great weight to the opinions of state agency non-examining psychological consultants ("reviewing psychologists"), Drs. Ju and Barsukov, each of whom determined that plaintiff had only moderate limitations.  Tr. 20.

For claims filed before March 27, 2017, only acceptable medical sources may provide medical opinions.   20 C.F.R. § 416.927(a)(2) (2016).   Acceptable medical sources include licensed physicians and psychologists, but the operative regulations exclude nurse practitioners.   *See* 20 C.F.R. §§ 416.913(a), 416.927(d)(1) (2016). Medical opinions are assigned evidentiary weight according to a hierarchy that considers a variety of factors, including the treatment or examining relationship between the patient and medical provider, consistency with the record, and the medical provider's specialization.  20 C.F.R. § 416.927(c) (2016).

Nurse practitioners are instead treated as "other sources" and evaluated under the same standard as lay witnesses, and therefore an ALJ may reject a nurse

practitioner's opinion for reasons germane to that provider.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Nevertheless, the Social Security Administration has recognized the increasing importance of "non-acceptable" medical sources in patient care and clarified that for those claims filed before March 27, 2017, an ALJ *may* apply the regulatory factors used to evaluate medical opinions to opinions from "non-acceptable" sources.  SSR 06-03, 2006 WL 2263437 (Aug. 9, 2006) (emphasis added).  After applying these factors, an opinion from a "non-acceptable" medical source may outweigh an opinion from an acceptable medical source.  *Id.*

If supported by substantial evidence, an inconsistency between a nurse practitioner's opinion that a claimant will have certain limitations in the workplace and the claimant's activities of daily living is a sufficiently germane reason to discount the opinion.  *Adams v. Berryhill*, 725 F. App'x 541, 542 (9th Cir. 2018).  However, such conflicts must be adequately explained by the ALJ; general assertions are insufficient.  *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017); *also see, e.g., William A. v. Saul*, 433 F. Supp. 3d 1201, 1212 (D. Or. 2019) (failure to address the quality of a psychiatric nurse practitioner's opinion and the extensive medical documentation supporting it constituted legal error).

### A.    *Opinion of Cheryle Ramirez, PMHNP*

Ms. Ramirez treated plaintiff from 2014 to 2018, performing mental status and psychiatric evaluations and prescribing plaintiff psychotropic medication.  *See* Tr. 300, 539, 541-42, 591.  In August 2018, Ms. Ramirez assessed plaintiff's functional limitations in the workplace, opining that plaintiff had several marked and extreme

limitations in performing work-related tasks.  Tr. 522-27.  Specifically, Ms. Ramirez determined that plaintiff had marked limitations in sequencing multi-step activities and problem-solving; marked to extreme limitations handling conflicts and maintaining social interactions free of excessive irritability or argumentativeness; and marked to extreme limitations in completing tasks in a timely manner and working a full day without needing more than the allotted rest periods.  *Id.*

In his findings, the ALJ assigned Ms. Ramirez's opinion little weight on the basis that it was inconsistent with plaintiff's ability to live independently, care for her children, and care for her grandmother, who lives separately from plaintiff.  Tr. 19.  The ALJ's written decision also states that he "considered opinion evidence in accordance with the requirements of 20 CFR 416.927."  Tr. 17.

The ALJ failed to articulate the specific conflict between plaintiff's activities of daily living and Ms. Ramirez's opinion that plaintiff is unable to work, and accordingly, committed harmful error.  While this type of inconsistency may be sufficiently germane to reject lay evidence, in this case, the record does not reveal such a conflict.  Although plaintiff performs household chores, helps care for her grandmother, and goes grocery shopping, the record also reveals that plaintiff experiences paralyzing flashbacks that disrupt her ability to complete household chores and care tasks for her grandmother, that her mother also helps care for her grandmother, and that she is always accompanied while shopping.  Tr. 44, 192, 200 (flashbacks disrupt chores and care tasks); Tr. 34, 45 (plaintiff's mother helps to care for grandmother); Tr. 199, 194 (plaintiff does not shop alone).

The error is harmful despite the ALJ's statement that he considered the regulatory factors. The ALJ is only required to articulate a germane reason to discount statements from "non-acceptable" medical sources, lower than the "clear-and-convincing" standard required for statements from acceptable medical sources, and yet a general assertion that an ALJ appropriately considered the evidence is insufficiently specific.

### B.    *Opinions of Drs. Ju and Barsukov*

Plaintiffs also argue that the ALJ erred by crediting the reviewing psychologists' opinions that plaintiff is limited to "brief, indirect public contact," asserting that plaintiff additionally is limited in her ability to interact with co-workers. Tr. 59. Plaintiff also contends that the reviewing psychologists either did not have the opportunity to review or did not indicate whether they reviewed the lay statement from plaintiff's Goodwill supervisor, Ms. Paul.

On this point, the ALJ did not err. Drs. Ju and Barsukov opined that plaintiff was not significantly limited in her ability to appropriately interact with supervisors nor was she significantly limited in her ability to interact with coworkers or peers. Tr. 59, 73. Plaintiff's argument that an ALJ erred by crediting a medical opinion that is inconsistent with a lay opinion is not supported by law. Plaintiff relies on *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880 (9th Cir. 2006) for this proposition. In *Robbins*, the Ninth Circuit re-affirmed the principle that the ALJ must consider all relevant evidence in formulating the RFC but did not extend that principle to rejecting opinions from reviewing medical sources. *Id.* at 883.

One final point merits discussion: Ms. Ramirez's opinion and supporting notes conflict with the opinions of the reviewing psychologists. Tr. 58, 73 (opining that plaintiff is not significantly or only moderately limited in her ability to perform work-related tasks); Tr. 522-27 (opining that plaintiff is markedly to extremely limited in her ability to perform work-related tasks). However, the ALJ did not invoke this conflict as grounds for discounting Ms. Ramirez's opinion, and accordingly, the Court may not affirm on this basis. Moreover, considering the extensive treatment notes prepared by or signed by Ms. Ramirez, this Court cannot accept that the ALJ's finding was nevertheless supported by substantial evidence. Thus, the ALJ committed harmful error in his evaluation of the evidence from a "non-acceptable" medical source.

## IV.    Lay Witness Testimony

Finally, plaintiff argues that the ALJ erred by discounting statements from plaintiff's former supervisor, Jennifer Paul, and from plaintiff's mother, Diana A. The ALJ assigned both statements little evidentiary value based on inconsistencies with the medical and other evidence of record. Tr. 18.

An ALJ is required to consider lay evidence from competent sources regarding a claimant's symptoms and ability to work. *Dodrill*, 12 F.3d at 918. The ALJ must articulate germane reasons, specific to each witness, in order to discount the statement. *Id.* at 919; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The absence of corroborating medical evidence is not a sufficiently germane or specific reason to discount lay witness testimony. *Id.* at 1116. However, the ALJ is not

necessarily required to discuss reasons for rejecting lay evidence if the ALJ properly rejected the claimant's own subjective symptom testimony for reasons that also apply to the lay evidence. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009).

### A.    *Job Evaluation of Former Supervisor: Jennifer Paul*

Jennifer Paul supervised plaintiff as part of a supported work experience at Goodwill from June through August in 2016. Tr. 207. Ms. Paul submitted an exit summary evaluating plaintiff's job performance and indicated that plaintiff had poor attendance due to "the days that she was asked to work" and "her medical and mental needs." *Id.* Per Ms. Paul's observations, plaintiff struggled to track her attendance, sign-in on a logbook, and stand for more than twenty minutes due to pain. Tr. 208. While plaintiff interacted positively with her supervisor, Ms. Paul observed that plaintiff avoided her co-workers and "would stay outside to avoid any kind of social [interaction] with her peers." Tr. 207-08. The ALJ concluded that Ms. Paul's statement was of little evidentiary value because it implied that scheduling conflicts caused plaintiff's absenteeism and focused on physical issues "not supported by the medical record." Tr. 18. The ALJ did, however, acknowledge that Ms. Paul had provided examples of plaintiff's difficulty interacting with co-workers. *Id.*

First, Ms. Paul's statement offered both scheduling conflicts and health issues as explanations for plaintiff's poor attendance. The ALJ rationally resolved this inconsistency, noting in his findings that "the totality of the medical evidence of

record . . . does not support absenteeism to the level she demonstrated." Tr. 19. Accordingly, this Court may not substitute its own judgement.

Second, the ALJ did not error by discounting Ms. Paul's other statements about plaintiff's inability to stand due to pain and difficulties interacting with co-workers. Ms. Paul stated that plaintiff "often asked for a chair due to the fact she was unable to stand for more than 20 minutes at a time. Tr. 207. As before, the ALJ was tasked with rationally interpreting the evidence and resolving inconsistencies. Neither the medical record nor plaintiff's subjective symptom reports discuss whether plaintiff's back impairment limit her ability to work, as discussed in Section I. In fact, Ms. Paul's statement is the only piece of evidence that advances a specific limitation resulting from the back pain. Accordingly, the ALJ rationally concluded that Ms. Paul's statement was inconsistent with the record.

Finally, the ALJ also rationally interpreted Ms. Paul's statements regarding plaintiff's ability to interact with others. In her evaluation, Ms. Paul indicated that plaintiff "was pleasant and kind to her supervisor" but also observed that plaintiff stayed outside to avoid "any kind of social [interaction] with her peers." Tr. 207. However, Ms. Paul also stated that plaintiff did well "when she was applying herself" but that "her attendance was not something that the hiring manager felt was good enough to earn her a job at Goodwill." Tr. 207. The ALJ rationally interpreted Ms. Paul's statements to mean that the primary challenge to employing plaintiff was her absenteeism, not her struggles to interact with co-workers.

### B.    *Written Statement of Diana A*

On October 24, 2016, plaintiff's mother, Diana A., submitted a Function Report to DHS regarding plaintiff's limitations. Tr. 191. The report describes plaintiff's struggles with mental health, noting that over the years, plaintiff's anxiety and PTSD had worsened to the point of "immobilization." Tr. 191. Diana stated that plaintiff experiences flashbacks that leave her immobile, has difficulty completing chores, usually requiring several attempts, and that struggles to interact with others without becoming angry and confrontational. Tr 192-97. The ALJ accepted her statement "as descriptive of [Diana's] perceptions" but discounted its evidentiary value as it was not "fully consistent with the medical and other evidence of record and the claimant's stated abilities." Tr. 18.

Here, the ALJ failed to identify which parts of Diana's statements were inconsistent with the medical record. The ALJ failed to identify any specific inconsistency, offering only a conclusory statement that such inconsistencies exist. Additionally, as discussed in Section II, the ALJ did not provide sufficiently clear-and-convincing reasons to discount plaintiff's subjective symptom testimony about her mental health, and so those reasons may not be invoked as grounds to discount Diana's statement.

Further, the ALJ points to an inconsistency within Diana's statement that plaintiff "did not have difficulty cooking and . . . did not like crowds" but "was able to shop at least two times a month." Tr. 18. On this point, the ALJ's findings mischaracterize the evidence at issue. Diana stated plaintiff cooked "complete meals" but that since her illness had set in, she "hasn't been wanting to cook [and is]

preparing more frozen [foods]." Tr. 193. Similarly, Diana stated that plaintiff dislikes crowds of people and while shopping twice a month she is "with someone at all times." Tr. 194. The ALJ must offer more than conclusory statements or mischaracterizations of lay statements to meet the germane and specific standard.

## V.    Type of Remand

The Ninth Circuit precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Under the three-step "credit-as-true" doctrine, the reviewing court must first determine whether the ALJ committed harmful legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5. 2016). Second, if the court finds such an error it must "review the record as a whole and determine whether it is fully developed, free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (quotation marks omitted). Third, if the court does determine that the record has been fully developed, and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Id.* (quotation marks omitted).

Here, the first step is satisfied because the ALJ (1) failed to provide specific, clear, and convincing reasons to reject plaintiff's subjective symptom testimony, (2) failed to provide specific, germane reasons to reject plaintiff's mother's lay statements, and (3) failed to provide specific, germane reasons to reject evidence from plaintiff's PMHNP.

However, the record is not free from conflicts. As discussed in Section III, the opinion of plaintiff's PMHNP, Ms. Ramirez, conflicts with those of reviewing psychologists Drs. Ju and Barsukov.  In light of this conflict, further proceedings are warranted.

On remand, the ALJ should assess plaintiff's subjective symptom testimony and either credit that testimony or provide clear and convincing reasons to discount it. The ALJ must also assess the statement from Diana and either credit the evidence or provide a sufficiently germane reason to discount it. Finally, the ALJ should assess the opinion of plaintiff's PMHNP, Ms. Ramirez, and either credit that testimony or provide a sufficiently germane reason to discount it.

## CONCLUSION

The Commissioner's decision is REVERSED and the case is REMANDED for further proceedings consistent with the Court's opinion.

IT IS SO ORDERED.

Dated this  30th  day of November of 2022

_____/s/Ann Aiken_____
Ann Aiken
United States District Judge